IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIAM C. STEELE, | § | |
| TDCJ-CID NO.1089890, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-09-4076 |
| | § | |
| RICK THALER, *et al.*, | § | |
| Defendants. | § | |

MEMORANDUM AND ORDER ON DISMISSAL

Plaintiff William C. Steele, a *pro se* inmate incarcerated in the Texas Department of Criminal Justice-Correctional Institutions Division ("TDCJ-CID"), has filed an amended complaint pursuant to 42 U.S.C. § 1983 (Docket Entry No.4), in which he alleges that defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"). Defendants have filed a motion for summary judgment, to which plaintiff has filed a response. (Docket Entries No.16, No.25). In his response, plaintiff seeks to add an equal protection claim and to add as defendants the University of Texas Medical Branch ("UTMB"), Jester III Practice Manager Susan Dostal, and Doctors Owen Murray, Lannette Linthicum, and Denise DeShields. (Docket Entry No.25, pages 12-13). The Court having considered the pleadings on file and the relevant legal authorities, finds that pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, plaintiff should be granted leave to amend his complaint.

Nevertheless, for the reasons to follow, the Court will grant

defendants' motion for summary judgment, deny plaintiff relief on his claims against all defendants, and dismiss the complaint with prejudice.

## I. FACTUAL BACKGROUND AND CLAIMS

Plaintiff is in his late sixties and suffers from the lack of teeth, a severe heart condition, asthma, and morbid obesity.[1] (Docket Entries No.4, No.10).  Plaintiff was informed in 2003 that he could not get dentures; nevertheless, he agreed to having two of his four remaining teeth extracted. (Docket Entry No.10, pages 1, 6).  After conversing with another inmate who was litigating UTMB's dental policy, plaintiff requested dentures in 2008 because he had difficulty eating and suffered from bruised, bleeding gums. (Docket Entries No.4, page 2; No.25, page 7).  Jester III Dentist Belvis McBride would not recommend that plaintiff be fitted with dentures because plaintiff did not evince a medical necessity under UTMB's dental policy E-36.4.  (Docket Entry No.4, page 2).  McBride did not explain the specifics of the dental policy E-36.4 to plaintiff until August 12, 2009.  At that time, McBride also informed plaintiff of another policy whereby plaintiff could pay for outside dental services and dentures.[2]  (Id., page 3).  McBride

_____

1 Plaintiff is serving a twenty year sentence in TDCJ-CID from a 2002 conviction for aggravated sexual assault in Jasper County, Texas.  See TDJC website at - http://168.51.178.33/webapp/TDCJ/InmateDetails.jsp?sidnumber=01224991 (viewed on February 14, 2011).

2 Practice Manager Susan Dostal informed plaintiff in response to Step 1 Grievance 2009200261 on August 26, 2009, that if he wanted partials made from an outside dentist at his expense, he should provide contact information to the medical department, who would then submit his request for approval.  (Docket

took plaintiff's medical history and later prescribed a blended diet. (Id.). Plaintiff discontinued the diet because the food paste would stick in his throat and the experience "took all the pleasure out of eating." (Docket Entry No.25-1, page 5). Plaintiff grieved without success McBride's refusal to recommend him for dentures and the dental policy.[3] (Docket Entry No.10, pages 2-4).

Plaintiff seeks declaratory and injunctive relief and compensatory and punitive damages from McBride and Horton in their individual capacities for alleged violations of the Eighth Amendment and the ADA and RA. (Docket Entries No.4, pages 2, 3, 9, 10; No.25, page 12). Plaintiff seeks declaratory, injunctive, and monetary relief from defendant Susan Dostal in her individual capacity, and declaratory, injunctive, and compensatory relief from UTMB. (Docket Entry No.25, page 12). He also seeks declaratory and injunctive relief from Rick Thaler in his official capacity as the Director of TDCJ on the same grounds. (Docket Entry No.4, pages 3, 9).

Defendants McBride, Horton, and Thaler assert their

_____

Entry No.16-2, page 10). Plaintiff indicates that he has been unable to find a dentist to come to his Unit to make dentures for him and Dr. McBride has indicated that UTMB would not allow him to do so. (Docket Entry No.25, page 8).

3 Plaintiff filed three sets of Step 1 and 2 grievances complaining about the dental policy and his care. (Docket Entry No.16-2,pages 3-6, 9-12, 13-16). He also filed Step 1 Grievance 2009186413 (Id., pages 7-8) and a written complaint addressed to Dr. McBride. (Docket Entry No.10, page 14). Practice Manager Susan Dostal denied all of his Step 1 Grievances. (Docket Entry No.16-2, pages 4, 8, 10, 14). In each response, she informed plaintiff about the dental policy and that his body mass index ("BMI") did not show that dentures were a medical necessity. (Id.).

entitlement to qualified immunity and Eleventh Amendment immunity. (Docket Entry No.16).   They move for summary judgment, and argue that plaintiff has not established a deliberate indifference claim or an ADA and RA claim and that he is not entitled to injunctive relief.   (Id.).

## II. DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   FED. R. CIV. P. 56(c).   The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.   Duckett v. City of Cedar Park, Tex., 950 F.2d 272, 276 (5th Cir. 1992).   Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact."   Hamilton v. Seque Software, Inc., 232 F.3d 473, 477 (5th Cir. 2000) (quoting Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994)).

## A. Individual Capacity Claims

### 1. The Americans with Disabilities Act

The ADA is a federal anti-discrimination statute intended to eliminate discrimination against individuals with disabilities. Delano-Pyle v. Victoria County, Texas, 302 F.3d 567, 574 (5th Cir. 2002).  Title II of the ADA authorizes suits by private citizens for money damages against public entities that violate 42 U.S.C. § 12132.  The rights and remedies available under the ADA are almost duplicative of those available under the RA.  See 42 U.S.C. § 12133 (incorporating by reference 29 U.S.C. § 794a); Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 455 (5th Cir. 2005).[4]  Title II of the ADA applies to state prison facilities and state prison services.  See Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 210 (1998).

Although Title II provides disabled persons redress for discrimination by a public entity, it does not, by statutory definition, include individuals. 42 U.S.C. § 12131(1).  Courts that have addressed the question have concluded that individual defendants cannot be held liable for violation of Title II of the ADA.  See Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 & n. 8

---

4 The Court will consider the plaintiff's ADA and RA claims together, because the two statutes provide parallel remedies.  See Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000); 42 U.S.C. § 12133.  "The language in the ADA generally tracks the language set forth in the RA.  In fact, the ADA expressly provides that 'the remedies, procedures and rights' available under the RA are also accessible under the ADA."  Delano-Pyle v. Victoria County, Tex., 302 F.3d 567, 574 (5th Cir. 2002) (quoting 42 U.S.C. § 12133 (1995)).

(8th Cir. 1999) (en banc); <u>Arlt v. Missouri Dep't of Corrections</u>, 229 F.Supp.2d 938, 942 (E.D. Mo. 2002); <u>Lewis v. New Mexico Dep't of Health</u>, 94 F.Supp.2d 1217, 1230 (D.N.M. 2000); <u>Calloway v. Glassboro Dep't of Police</u>, 89 F.Supp.2d 543, 557 (D.N.J. 2000); *see also* <u>Joseph v. Port of New Orleans</u>, Civil Action No. 99-1622, 2002 WL 342424, at *10 (E.D. La. March 4, 2002), *aff'd*, 55 Fed. Appx. 717 (5th Cir. Dec. 27, 2002) (not selected for publication). Although the Fifth Circuit has not expressly addressed the question of individual liability under Title II of the ADA, it has recognized that a plaintiff cannot sue an individual under the Rehabilitation Act, 29 U.S.C. § 794(a), which provides a comprehensive remedial framework and enforcement provisions similar to the ADA. *See* <u>Lollar v. Baker</u>, 196 F.3d 603, 609 (5th Cir. 1999). Moreover, punitive damages are unavailable under the ADA. <u>Barnes v. Gorman</u>, 536 U.S. 181, 189-90 (2002).

To the extent that plaintiff seeks relief from defendants from defendants McBride, Horton, Dostal, or any other defendant in his or her individual capacity, he fails to state a valid cause of action against them under the ADA or RA as a matter of law.

<u>2. The Civil Rights Act</u>

The Civil Rights Act of 1866 creates a private right of action for redressing the violation of federal law by those acting under color of state law. 42 U.S.C. § 1983; <u>Migra v. Warren City Sch. Dist. Bd. of Educ.</u>, 465 U.S. 75, 82 (1984). Section 1983 is not

itself a source of substantive rights but merely provides a method for vindicating federal rights conferred elsewhere.  Albright v. Oliver, 510 U.S. 266, 271 (1994).

### a. Eighth Amendment

### 1. Defendants McBride and Horton

Defendants McBride and Horton assert the defense of qualified immunity from plaintiff's Eighth claims for monetary damages against them in their individual capacities.  (Docket Entry No.16). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'"  Saucier v. Katz, 533 U.S. 194, 199-200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).  Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

"To rebut the qualified immunity defense, the plaintiff must show:  (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident."  Waltman v. Payne, 535 F.3d 342, 346 (5th Cir. 2008) (footnote omitted).  The Court has discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 818 (2009).

Prison officials violate the constitutional prohibition against cruel and unusual punishment when they demonstrate deliberate indifference to a prisoner's serious medical needs, constituting unnecessary and wanton infliction of pain. *See* Wilson v. Seiter, 501 U.S. 294, 297 (1991). To prevail on a claim of deliberate indifference to medical needs, the plaintiff must establish that the defendant denied him treatment, purposefully gave him improper treatment, or ignored his medical complaints. Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the prison officials were actually aware of the risk, yet consciously disregarded it. Id. at 837, 839; Lawson v. Dallas County, 286 F.3d 257, 262 (5th Cir. 2002). "[F]acts underlying a claim of 'deliberate indifference' must clearly evince the medical need in question and the alleged official dereliction." Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." Id.

UTMB's "Dental Prosthodontic Services," Number E-36.4 of the Correctional Managed Health Care Policy Manual, instructs dentists to gauge the necessity for dentures as follows, in pertinent part:

I.   MEDICALLY NECESSARY PROSTHODONTICS

A.   Dental prosthetics are provided when the health of the patient would otherwise be adversely affected.

8

B.   Nutritional Status

    1.   Dentists should thoroughly review the patient's medical history. Nutritional supervision is a critical component of the management of patients with chronic diseases such as heart disease, cancer, or diabetes.

    2.   Dentists should monitor the nutritional status of patients by tracking weight trends for those who may have compromised masticatory [chewing] function. A review of the Body Mass Index (BMI) may be utilized as a tracking methodology.

        a.   * * * * *
The BMI should be reviewed for those patients who are edentulous [without teeth], essentially edentulous, or who have fewer than seven occluding posterior teeth and have complaints regarding mastication [chewing].

        b.   A BMI from 18.5 to 25 is considered normal. Patients with a BMI of 25 or lower which is trending downward or a patient 10% or more underweight relative to their ideal body weight should be referred to the patient's treating physician for consultation.

        c.   If the patient's physician determines that the patient's nutritional status is compromised, special diets such as a mechanically blended diet should be considered. Patients should be compliant with all diet recommendations.

C.   Dental prostheses for those patients with compromised masticatory [chewing] function should also be considered following initiation and follow-up of the effectiveness of the special diet.

D.   * * * * *
It should be kept in mind, however, that most foods are quite easily digested with minimal mastication [chewing] and there is little likelihood that dentures will ameliorate

pre-existing gastro-intestinal problems according
to current dental literature.

(Docket Entry No. 16-6, Exhibit F.)

Plaintiff's BMI, as tracked from 2002 to 2009, does not show
that dentures were a medical necessity as defined by the dental
policy.[5]  In his affidavit submitted in support of the motion for
summary judgment, Brian Tucker, D.D.S., a dentist for thirty-one
years and Regional Dental Director for the Texas Tech Managed
Correctional Health Care for sixteen years, attests to plaintiff's
need for dentures based on his review of plaintiff's medical
records, as follows, in pertinent part:

> The Correctional Managed Care policy on the availability
> of dental prosthodontics (dentures and partial dentures)
> for TDCJ inmates is that the prosthodontics are provided
> when they are medically necessary.  This determination is
> based on the patient's general health rather than the
> degree of discomfort he may report when chewing.  Any
> dentist or physician determining that an inmate has a
> special need may submit a request for prosthodontics.
> That request is then evaluated by the CMC Dental
> Utilization Review Committee.
>
> Review of the dental record shows that Mr. Steele sought
> dental care on April 29, 2008, requesting dentures and
> complaining that his gums get sore, bruised and bleed
> when eating.  Mr. Steele weighted 342 lbs. at that time
> and had a height of 72 inches, giving him a Body Mass
> Index (BMI) of 46.  Mr. Steele was super obese, far above

---

5 In April 2002, plaintiff weighed 284 pounds and had a BMI of 39.  (Docket Entry
No.18, page 19).  On April 30, 2008, plaintiff weighed 342 pounds and his BMI was
46.  (Id., page 17).  On June 29, 2009, plaintiff weighed 335 pounds and his BMI
was 45.  (Id., page 17).  Plaintiff's recorded weight on September 24, 2009, was
315 pounds.  (Id., page 26).  Although plaintiff lost some weight during this
time, his BMI never fell within normal or below normal range nor was he ever ten
percent or more underweight relative to his ideal body weight.

The record also reflects that Dr. McBride referred plaintiff for a blended diet.
Plaintiff discontinued the diet, thereby rendering any follow-up review, as
required by the policy, useless.

normal weight range.  He was examined for cut or bleeding
gums, but clinical observations did not substantiate his
complaints.  No further treatment was indicated based on
those findings.  The vital signs dated 11-30-09 show Mr.
Steele's weight to 312 pounds, thus giving him a BMI of
42, which is still morbidly obese, but an improvement
from the BMI of 46.  This degree of weight loss over a 19
month period is not a medical concern, and in fact
constitutes an improvement in Mr. Steele's overall
medical well being.

Dr. McBride determined not to provide dentures based upon
his evaluation of Mr. Steele's condition, and he
determined that prosthodontics were not medically
necessary at that time.  Accordingly, he complied fully
with the CMC policy.

My review of Plaintiff's medical record indicates that
dentures are not medically necessary for Mr. Steele.  Mr.
Steele was evaluated by multiple providers other than Dr.
McBride; nurses, P.A.'s and physicians who apparently
concur in his diagnosis.  None of them diagnosed any
medical condition requiring treatment by dentures and no
Request for Medically Necessary Removable Prosthetics was
ever submitted. Mr. Steele was prescribed a mechanically
blended diet which would satisfy his nutritional needs
with no chewing required, but he refused to eat the
prescribed food.  However, despite his insistence on
eating the regular food available on the cafeteria line,
the patient's weight has remained within the morbidly
obese weight range. Based on this medical record, I must
concur with Dr. McBride in not requesting dental
prosthetics for Patient William Charles Steele. . . . Mr.
Steele's medical record does not indicate a medical need
for dentures at any time up to December 2, 2009.

There is no reason to believe that the edentulous state
(lacking teeth) makes a patient any more susceptible to
disease.  So the primary concern in determining medical
necessity in Mr. Steele's case is his weight.  Mr. Steele
has remained severely overweight during the entire
relevant period.  His dental condition has not made him
ill at any point, and his medical record does not
substantiate the claim that his gums are being severely
damaged by his condition.  As such, I conclude that
dentures are not medically necessary for Mr. Steele, he
is not at a serious risk of substantial harm for his lack
of dentures, and the special diet offered to him is the
correct treatment plan for his current condition.  The

> Dental Policies explained to Mr. Steele require dentures when they are medically necessary.  While it is possible that Mr. Steel[e] could benefit from dentures for reasons of vanity and increased comfort, dentures are not "medically necessary" for his continued health.

(Docket Entry No.16-5, pages 3-4).

An inmate does not have a constitutional right to the treatment of his choice.  *See* Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986) (citing Ruiz v. Estelle, 679 F.2d 1115, 1150 (5th Cir.), *vacated in part as moot*, 688 F.2d 266 (5th Cir. 1982)). Mere disagreement with prison medical providers about what constitutes appropriate care does not rise to the level of a constitutional violation.  "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998) (recognizing a cognizable claim regarding inadequate dental care can be based on various factors including severity of condition).

The record, viewed in the light most favorable to plaintiff, reflects no probative summary judgment evidence that Dentist McBride failed to follow the established written dental policy or that he acted with deliberate indifference to plaintiff's serious medical needs by following the same.  He monitored plaintiff's BMI, reviewed plaintiff's medical records, and provided care for the dental issues presented.[6]  The record does not reflect that

---

6 In April, June, and August 2008, plaintiff saw Dr. McBride in the dental clinic within a few days after he submitted a sick call request.  (Docket Entry No.18, pages 13, 14, 15).  At each appointment McBride examined plaintiff's teeth,

plaintiff suffered any adverse medical condition from the lack of dentures, beyond the issues with his gums, which were treated, or from the dental care he received.

With respect to defendant Billy Horton, the law provides that a supervisory official "may be held liable if there exists either (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987). Horton, who is the Director of Dental Services for UTMB-CMC, attests that he does not know plaintiff and he was not involved in his dental care. (Docket Entry No.16-4, page 2). He further attests to the following, in pertinent part:

> No one corresponded with me about dentures for Mr. Steele. I did not know that Mr. Steele had requested dentures until I was served with a copy of the complaint in this lawsuit. Since September 1, 2003, UTMB

---

reviewed plaintiff's medical history, noted his weight and/or body mass index ("BMI"), and discussed plaintiff's concerns or instructed plaintiff on dental care. (Id.). On April 30, 2008, McBride took x-rays and explained the current UTMB policy on dentures to plaintiff. (Id., page 13). On June 20, 2008, McBride filled a cavity on one tooth. (Id., page 14). On August 28, 2008, McBride noted that plaintiff was in no pain or discomfort but complained of "not being able to eat." (Id., page 15). McBride referred plaintiff to medical for a soft diet pass. (Id.).

In June, August, and September 2009, plaintiff saw McBride, twice from sick call requests, and once for a follow-up examination. (Id., pages 16, 20, 26) At each appointment McBride again examined plaintiff's teeth, reviewed plaintiff's medical history, noted his weight and/or body mass index ("BMI"), and discussed plaintiff's concerns or instructed plaintiff on dental care. (Id.). In June, plaintiff reported that his gums felt much better than when he submitted the sick call request, and McBride once again explained the policy on dentures and partials. (Id., page 16). In August, McBride documented pre-existing conditions and performed a more thorough examination. (Id., page 20). A blended diet pass was ordered the same day. (Id., page 21). On September 24, 2009, McBride noted tooth decay on one tooth and took x-rays. (Id., page 28).

Correctional Managed Care (CMC) has maintained a policy that provides dentures for inmates when "medically necessary."

I had no role in approving the policy that provides dentures for inmates only when "medically necessary." This policy, like all of our policies, is always open for revision based upon new literature and new trends in dental care. In my role as Director of Dental Services for UTMB-CMC, I can only recommend changes to this policy. This policy, like all of our policies, must be approved not only by the Vice President for UTMB-CMC (currently Dr. Owen Murray), but also the Executive Medical Director at Texas Tech University (currently Dr. Denise DeShields) and the Director of the Health Services Division of the Texas Department of Criminal Justice (currently, Dr. Lannette Linthicum). All three entities must approve of any policy.

(Id., pages 2-3). Plaintiff presents nothing to show Dr. Horton's personal involvement in his dental care or any constitutional violation attributable to Dr. Horton.

Moreover, defendants McBride and Horton are entitled to qualified immunity on plaintiff's Eighth Amendment claims because they did not engage in conduct that violated a constitutional right that was clearly established at the pertinent times in this lawsuit; that is, the competent summary judgment evidence does not support a conclusion that defendants' conduct was objectively unreasonable in light of the legal rules that were clearly established at the time of their actions. This Court has found no case law in this Circuit requiring prison officials to provide dentures to inmates who ask for them, nor has the Fifth Circuit found unconstitutional the policy under which defendants acted. The failure of defendants to prescribe dentures cannot be viewed as

objectively unreasonable in light of their professional judgment that dentures were not medically necessary. Accordingly, plaintiff fails to defeat McBride's and Horton's defense of qualified immunity with respect to his Eighth Amendment claims against them for monetary damages. Defendants' motion for summary judgment is granted as to these claims.

### 2. Defendants Dostal and Thaler

Plaintiff is not entitled to relief on his claim that Practice Manager Susan Dostal denied or ignored his grievances. (Docket Entry No.25, page 7). Plaintiff does not have a federally protected liberty interest in having grievances resolved to his satisfaction. Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005)

To the extent that plaintiff complains that Dostal and Thaler failed or refused to correct McBride or to supervise him (Docket Entry No.25, page 7), he fails to state facts showing that Dostal or Thaler were personally involved in any constitutional violation or that either was responsible for the training or direct supervision of McBride or the formulation or implementation of the dental policy. Plaintiff's claims against Dostal and Thaler, therefore, are subject to dismissal under 28 U.S.C. § 1915A(b) (providing that court may dismiss the complaint or any portion thereof, if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted

or seeks monetary relief from a defendant who is immune from such relief).

Plaintiff's request for equitable relief is predicated upon a viable Eighth Amendment claim against defendants in their individual capacities; therefore, his request for a preliminary and permanent injunction enjoining defendants from applying UTMB's dental policy to him and from failing to take impressions of his teeth and to make upper and lower partial plates (Docket Entry No.4, page 9) is denied.

Moreover, plaintiff's pleadings do not reflect any facts to show that the conduct of any defendant was motivated by evil intent or a criminal indifference that would entitle him to punitive damages. *See* Williams v. Kaufman County, 352 F.3d 994, 1015 (5th Cir. 2003) (noting standard requires "a subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations"). Accordingly, plaintiff's request for punitive damages from defendants is denied.

### b. Equal Protection

#### 1. Defendants McBride, Horton, and Thaler

Plaintiff contends that defendants McBride, Horton, and Thaler have created policies or practices that deprived him of his constitutional rights and "discriminated against him due to his oral disability and denied him the equal protection of the laws by

16

denying him prosthetics and giving them to other similarly disabled inmates who have less serious medical needs, and without a rational basis for doing so." (Docket Entry No. 25, page 13). Plaintiff contends that other disabled inmates, such as those with ambulatory disabilities, are not issued a "temporary fix," such as crutches, and then denied an artificial limb until their weight falls below acceptable level. (Id., page 6). Plaintiff contends that dental policy E-36.4, as applied to orally disabled inmates, creates a higher threshold for determining medical necessity (e.g., a severe condition as opposed to a serious one), and that this application ignores his serious medical needs. (Id., page 29).

The record, however, does not show that Horton or Thaler were personally involved in decisions regarding plaintiff's dental care or that they created or implemented dental policy E-36.4. Moreover, plaintiff has not alleged facts that would support a finding that they or any other defendant engaged in purposeful discrimination or treatment that differed from other similarly-situated inmates. See Longoria v. Dretke, 507 F.3d 898, 904 (5th Cir. 2007) (stating to prevail on an equal protection claim, inmate must show that defendants "purposefully discriminated against him and that he was treated differently from similarly-situated prisoners"). Therefore, plaintiff's equal protection claims against defendants are subject to dismissal as legally frivolous under 28 U.S.C. § 1915A.

## 2. Defendants Murray, Linthicum, and DeShields

Plaintiff does not indicate in which capacity he sues defendants Owen Murray, Lannette Linthicum, and Denise DeShields, whom Dr. Horton identified as the creators and enforcers of dental policy E-36.4. (Docket Entry No.16-4, pages 2-3). Plaintiff does not allege nor show that Murray, Linthicum, or DeShields had any personal involvement in denying him dentures. These doctors are sued because they are responsible for the dental policy. "Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Thompkins, 828 F.2d at 304 (citations omitted).

Plaintiff contends that "Policy E-36-4 is unconstitutionally deficient because it requires a severe medical condition to qualify as medical necessity" and by its application, allows defendants to ignore his pain and suffering and to deny him a prosthetic device while providing such devices to inmates with other types of disabilities. (Docket Entry No.25, page 22). He claims defendants use the BMI score to deny dentures even though the policy provides that other medical problems may indicate a medical necessity for dentures. (Id., page 30). He further maintains the policy allows medical providers to erect arbitrary and burdensome procedures

18

which result in delay and denial of medical care.   (Id., page 31).

Plaintiff, however, has not shown that his constitutional rights were violated by the application of this policy.   Moreover, no federal court in Texas has yet held dental policy E-36.4 is unconstitutional; "on the contrary, the Southern District has concluded that the policy is not unconstitutional, nor is the policy so deficient that it acts as a deprivation of constitutional rights."   Gibson v. Langston, Civil Action No.6:10cv136, 2011 WL 42897 at *6 (E.D. Tex. Jan. 6, 2011) (agreeing with the opinions in Huffman v. Linthicum, Civil Action No.H-06-0308, 2009 WL 243000 (S.D. Tex., Jan. 29, 2009) (opinion after remand) and Foxworth v. Khoshdel, Civil Action No.H-07-3944, 2009 WL 3255270 (S.D. Tex., Sept. 28, 2009) that the denture policy is not unconstitutional). The Court is not insensitive to plaintiff's claims and sympathizes with the frustration, inconvenience and discomfort that he endures without dentures.   Nevertheless, plaintiff has not shown that the policy of providing dentures only when there is a medical necessity amounts to a repudiation of his constitutional rights.   At best, he has shown that he disagrees with the conclusion that there was no medical necessity in his case; his disagreement with that assessment does not provide a basis for a meritorious constitutional claim.   Accordingly, plaintiff's claims against Doctors Murray, Linthicum, and DeShields are dismissed pursuant to 28 U.S.C.§ 1915A.

### B. Official Capacity Claims

### 1. The Civil Rights Act

### a. Defendant Thaler

Plaintiff indicates that he seeks relief only from TDCJ-CID Director Rick Thaler in his official capacity, and no other defendant. (Docket Entry No.4, page 3). Plaintiff's claims for monetary damages from any defendant in his or her official capacity as an employee of the State of Texas are barred by the Eleventh Amendment, and these claims are dismissed. *See* Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Oliver v. Scott, 276 F.3d 736, 742, 742 (5th Cir. 2002).

The Eleventh Amendment, however, does not bar a claim for prospective relief. *See* Ex parte Young, 209 U.S. 123 (1908); Green v. Mansour, 474 U.S. 64, 68 (1985). The Ex parte Young exception only applies when the named defendant state official has some connection with the enforcement of the act and "threaten and are about to commence proceedings to enforce the unconstitutional act. Okpalobi v. Foster, 244 F.3d 405, 416 (5th Cir. 2001). Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's "policy or custom" must have played a part in the violation of federal law. Hafer v. Melo, 502 U.S. 21, 25 (1991) (quoting Monell v. Dept. of Social Servs. of New York, 436 U.S. 658, 694 (1978)).

Defendant Thaler is the Director of TDCJ-CID and is not an employee of UTMB, which is a separate state entity. The policy at issue in this case was developed by UTMB's Correctional Managed Care division and is implemented by employees of the same. (Docket Entry No.16-4, pages 2-3). The record does not show that defendant Thaler had any connection with the development or implementation of the UTMB dental policy.[7] Accordingly, plaintiff's claims for monetary damages and injunctive relief pursuant to 42 U.S.C. § 1983 against defendant Rick Thaler are barred by the Eleventh Amendment.

### b. Defendants Murray, Linthicum, and DeShields

To the extent that plaintiff seeks injunctive and declaratory relief from defendants Murray, Linthicum, or DeShields, he fails to show an entitlement to such relief because he has not shown that the dental policy they created and implemented violates the Constitution or federal law. Accordingly, plaintiff's claims for equitable relief from defendants Murray, Linthicum, and DeShields are subject to dismissal pursuant to 28 U.S.C. § 1915A.

---

7 Although plaintiff holds Thaler responsible for the medical care of all inmates and claims that Thaler "blinded" himself by refusing to participate in the informal medical complaint process and to Dr. McBride's medical practices (Docket Entry No.4, pages 3, 6), he states no facts to support such claims. Moreover, he offers nothing to show that Thaler had the authority to order McBride or any other medical provider to prescribe medical or dental care as he deemed appropriate or that Thaler was responsible for the training or direct supervision of McBride.

### c. UTMB

Plaintiff's § 1983 claims for damages or injunctive relief against UTMB are also barred by the state's sovereign immunity. Governmental entities are not "persons" within the meaning of § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Moreover, the State of Texas has not waived its sovereign immunity to suit in federal court for § 1983 claims. See Aguilar v. Tex. Dep't of Criminal Justice, 160 F.3d 1052, 1054 (5th Cir. 1998). Accordingly, plaintiff's claims for injunctive and monetary relief against UTMB are subject to dismissal under 28 U.S.C. § 1915A(b).

### 2. The Americans with Disabilities Act

Plaintiff contends that defendant Thaler failed in his affirmative duty to provide oral prosthesis to plaintiff because of his disability in violation of the ADA and RA. (Docket Entries No.4, page 8, No.25, page 20). He also seeks relief from the State of Texas through UTMB and its employees McBride and Horton. (Docket Entry No.25, page 27).

The ADA provides that "[a] State shall not be immune under the eleventh amendment . . . from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. The Supreme Court has accepted this provision as an unequivocal expression of Congress's intent to abrogate state

sovereign immunity.  <u>United States v. Georgia</u>, 546 U.S. 151, 154 (2006).  However, when faced with the specific issue of whether a disabled inmate in a state prison may sue the State for money damages under Title II of the ADA, the Supreme Court has held that, "insofar as Title II creates a private cause of action for damages against States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." <u>Id.</u> at 159 (emphasis in original).  Because Title II prohibits a wider range of activities than the Constitution, courts are to consider the following "on a claim by claim basis" in determining whether sovereign immunity is abrogated:

1.   Which aspects of the State's alleged conduct violated Title II;

2.   To what extent such conduct also violated the Fourteenth Amendment [or Constitution]; and

3.   Insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment [or Constitution], whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

<u>Id.</u>  To the extent that sovereign immunity is abrogated, the ADA provides for compensatory damages only upon a showing of intentional discrimination on the basis of disability.  *See* <u>Delano-Pyle v. Victoria County, Texas</u>, 302 F.3d 567, 575 (5th Cir. 2002).

Assuming without deciding that plaintiff has stated a *prima facie* ADA and RA claim, the Court finds that plaintiff is not entitled to equitable or compensatory relief from defendant UTMB or

its employees; the summary judgment record does not show plaintiff suffered a constitutional violation by the application of dental policy E-36.4.  Therefore, the ADA and RA cannot abrogate UTMB's sovereign immunity in this case.

To the extent that plaintiff contends he has been denied adequate dental care under the RA or ADA, a lawsuit under the RA or the ADA cannot be based on medical treatment decisions.  *See* Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1289, 1294 (11th Cir. 2005); Fitzgerald v. Correctional Corp. of America, 403 F.3d 1134, 1144 (10th Cir. 2005); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (ADA does not create a remedy for medical malpractice).  The summary judgment evidence here does not show that plaintiff was denied adequate dental care or access to prison food or dining facilities because he is lacking teeth.

Accordingly, plaintiff's ADA and RA claims against UTMB and other defendants are subject to dismissal pursuant to 28 U.S.C. § 1915A(b).

### III. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1.   Plaintiff's motion to appoint counsel (Docket Entry No.26) is DENIED.  Plaintiff's complaint is not particularly complex and he has proven capable of self-representation even with his special needs.  Plaintiff's pleadings adequately advance his claims and the evidence largely consists of his medical and dental records, UTMB policy statements, and institutional grievances and reports.

2.   Plaintiff's motion to amend his pleadings in his response to
     the motion for summary judgment (Docket Entry No.25) is
     GRANTED.   The Clerk shall add Susan Dostal, Murray Owens,
     Lannette Linthicum, Denise DeShields, and the University of
     Texas Medical Branch as parties to the suit.

3.   Plaintiff's claims against defendants Susan Dostal, Murray
     Owens, Lannette Linthicum, Denise DeShields, and the
     University of Texas Medical Branch are DISMISSED WITH
     PREJUDICE as legally frivolous pursuant to 28 U.S.C. § 1915A.

4.   Defendants' motion for summary judgment (Docket Entry No.16)
     is GRANTED.   All claims against defendants Belvis McBride,
     Billy Horton, and Rick Thaler are DENIED.

5.   This civil action is DISMISSED WITH PREJUDICE.

6.   All other motions, if any, are DENIED

        The Clerk will provide copies to the parties.

SIGNED at Houston, Texas, on _February 22_ , 2011.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE